**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**SALLY A. NOBLE**           *     **CIVIL ACTION NO. 05-0424**

**Versus**

**COMMISSIONER OF THE SOCIAL**      *     **MAGISTRATE JUDGE HAYES**
**SECURITY ADMINISTRATION**

## MEMORANDUM RULING

Before this Court, on consent from the parties, is an Appeal from a decision of the

Commissioner of Social Security ("Commissioner") filed on behalf of Petitioner, Sally A. Noble

("Noble"). For the reasons assigned herein, the decision of the Commissioner is hereby

**AFFIRMED, and this matter is DISMISSED WITH PREJUDICE.**

## Introduction

Noble filed her application for disability insurance benefits on March 27, 2003. The

application was for disability claims resulting from an ependymoma tumor of the lumbar spine.

Petitioner's insured status for disability benefits expired June 30, 2001. On the date Noble was

last insured, she was 49 years old. Noble has a general education diploma and previously worked

as a cosmetologist. A hearing before administrative law judge ("ALJ") W. Thomas Bundy was

held on September 23, 2004. The ALJ denied benefits, and the Appeals council found no reason

to review the ALJ's decision. Noble has filed this judicial appeal. Noble believes that

substantial evidence does not support the Commissioner's finding that she was capable of

performing light work activity because her complaints of pain were not fully and fairly evaluated.

Standard of Review; Substantial Evidence

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The ALJ resolved Petitioner's claim at step four of the sequential process. He found that she was capable of performing her past relevant work as a cosmetologist. When determining whether Petitioner was capable of performing her past relevant work, the ALJ was required to

review her residual functional capacity ("RFC") and the physical and mental demands of her past work. 20 C.F.R. § 404.1520(e). RFC is the level of work that a claimant can physically perform on a sustained basis despite his/her impairments; it may range from Very Heavy to Sedentary to Less than the Full Range of Sedentary. 20 C.F.R. § 404.1545(a)(1). An ALJ's assessment of a claimant's RFC is based on all the relevant evidence in the record, including medical opinions, symptoms, witnesses' credibility, and lay testimony; however, ALJ's are not required to give special weight to opinions that a claimant is "unable to work" or "disabled."

Noble argues that the ALJ failed to fully and fairly evaluate her complaints of disabling pain when he determined that she was capable of performing light work. Noble testified that beginning in September 2000, she was unable to work because it was difficult for her to stand. (Tr. 408). She claimed that she only slept 3 hours a night and took a two-hour lunch break each day. (Tr. 408). Noble testified that in June 2001 she was in 24-hour pain, but was able to drive. (Tr. 411, 412). She stated that she was only able to stand or walk an hour or an hour and a half and sit a couple of hours within and eight and a half hour work day. (Tr. 413, 414). She had to lie down for two to two and a half hours a day. (Tr. 414).

The ALJ found that Noble's allegations regarding her limitations were not totally credible. (Tr. 16). He found that Noble had some pain but that it was mild to moderate and would not prevent her from performing the work that the ALJ otherwise found her capable of performing. (Tr. 15).

Since Noble's insured status for disability benefits expired June 30, 2001, she was required to establish disability on or prior to that date. Noble's testimony of her limitations and

4

degrees of pain on and prior to June 30, 2001, are not consistent with her medical records.

Noble's ependymoma tumor was found after an MRI was performed in July 1999. However, it was opined that the tumor had probably been present for 10 to 15 years. (Tr. 96). In October 1999, the tumor was described as "asystematic" and the MRI report stated that the tumor had not changed since the July 1999 MRI and "does not compromise to the point of dysfunction." (Tr. 87, 88). In March 2000, Noble's medical records reveal that the tumor had not changed, that Noble had "no new complaints," and was "not anxious to undergo surgery considering the fact that her tumor is very stable and she has had it for a long time." (Tr. 86, 97). In April 2000, Noble's doctor reported that her "MRI's have not shown change over the last few months and she continues to be noting only a slight low presacral ache." (Tr. 97). In September 2000, another MRI showed no change in her tumor and Noble's doctor reported that Noble was "doing reasonably well symptomatically, and has had no significant change in her symptoms regarding her lower extremities." (Tr. 82, 85). In March 2001, an MRI showed no change in the tumor, but Noble reported "more pain than she had been in in the past." (Tr. 79). Noble underwent surgery and had the tumor removed at Johns Hopkins on June 7, 2002, almost a year **after** her insured status ended. (Tr. 138-146). At her preoperative visit on June 3, 2002, Noble reported "dull mid back pain which is worse with sitting. ... She is able to perform all activities of daily living and she can go up and down the steps without difficulty." (Tr. 160).

While the record shows that Noble's condition deteriorated and that her pain intensified after she underwent several surgeries, it also shows that on June 30, 2001, the date Noble was last insured under the Social Security Act, she was not disabled.

Because there is substantial evidence to support the ALJ's ruling that Noble was not disabled and was able to perform light duty work during the relevant time period, the decision of the Commissioner of Social Security is hereby **AFFIRMED, and this matter is DISMISSED WITH PREJUDICE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 22nd day of December, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE